■ CLARK OIL TRADING COMPANY, Appellant-Respondent, v J. ARON & COMPANY, Respondent-Appellant. [683 NYS2d 12] —Order, Supreme Court, New York County (William Davis, J.), entered on or about April 8, 1997, following a nonjury trial, which dismissed the first and second causes of action in the complaint, dismissed defendant's second, third, fifth and sixth counterclaims in their entirety, dismissed the first counterclaim in part and awarded judgment on the remainder of the first counterclaim and on the fourth counterclaim finding plaintiff liable to defendant for $29,585.06 and $63,866.37, respectively, but directing that, in view of an outstanding setoff of $150,000, defendant has no entitlement to a monetary recovery, unanimously modified, on the law and the facts, to reinstate the fifth and sixth counterclaims and to grant defendant judgment thereon in the sum of $48,213.37 and $395,499.55, respectively, plus interest, to the extent that these sums exceed the remainder of the $150,000 setoff, and otherwise affirmed, with costs payable to defendant, and the matter remanded for further proceedings.

This is a breach of contract action involving the sale and delivery of home heating oil. Defendant contracted to sell plaintiff 210,000 gallons to be delivered between January 10 and January 15, 1990. Timely delivery would occur upon defendant's vessel's tender of a notice of readiness. The contract provided that payment would be made either upon defendant's presentment of an invoice for the oil or under a letter of credit, prepared by plaintiff and held by its bank. Plaintiff apparently had originally selected Boston as the port of delivery, but subsequently designated Albany. The vessel originally selected by defendant was *The Zina*, but, in view of developing river ice, *The Zina's* insurer objected to the vessel navigating upstream of the George Washington Bridge. Defendant eventually settled a claim against its broker for $150,000 in this regard, which the trial court offset against damages due defendant by plaintiff arising from the present litigation. Defendant then selected a larger vessel, *The Maersk*, at additional cost, and arranged with plaintiff for *The Maersk* to discharge 150,000 gallons to a smaller vessel, *The Patricia*, hired at defendant's own expense, in international waters off of Delaware for shipment to Albany. The remaining 60,000 gallons were to be delivered to a Bayonne storage facility for plaintiff's account. Plaintiff agreed to amend the letter of credit to include the price differential for delivery to Albany and to extend the delivery date to January 17. Around this time period, the market for home heating oil apparently fell significantly, which created sharp price differentials between the contract price for the oil and the market price current around the time of the delivery date.

During the time period from January 12 to January 14, *The Maersk* tried, but failed, to discharge to *The Patricia* at the designated location during adverse weather conditions. Since defendant also had to make an unrelated delivery to Riverhead, Long Island, from *The Maersk*, by January 15, defendant directed *The Maersk* to that location for that delivery. On the morning of January 15, defendant contacted plaintiff to advise it of the problem that arose in connection with the discharge from *The Maersk* to *The Patricia*, but also to indicate that the operation, transferring 150,000 gallons, would be completed early on January 16 for subsequent delivery to Albany, after which *The Maersk* would proceed to deliver the remaining 60,000 gallons to Bayonne on January 17.

However, at the close of business on January 15, plaintiff served defendant with notice of breach. Plaintiff presently argues that the agreement was amended to extend the time for

delivery from January 15 to January 17 only as to the 150,000 gallons of oil destined for Albany, insofar as the amendment specifically resulted from *The Zina's* refusal to proceed up the Hudson, leaving that portion of the agreement requiring delivery of the 60,000 gallons to Bayonne by January 15 intact. Moreover, plaintiff did not believe that the oil destined for Albany would be timely delivered. When served with notice of breach, defendant advised plaintiff that the delivery date for the entire shipment was January 17, and that it believed that it could perform accordingly. Although defendant sought a commercial resolution of the dispute, plaintiff refused further performance under the contract, effectively declaring an anticipatory breach purportedly excusing plaintiff from further performance. In fact, *The Maersk*, on defendant's behalf, tendered its notice of readiness on January 16. On January 17, 197,000 gallons were unloaded at the Bayonne facility to plaintiff's account. Notably, delivery was not made to Albany. Defendant served plaintiff with an invoice, on which payment was refused, and then served notice on plaintiff that it would draw on the letter of credit, to which plaintiff objected. On January 25, defendant procured payment of $8.09 million from the bank against the letter of credit. Plaintiff subsequently sold the oil to a third party for $4.9 million. As damages, it now claims, *inter alia*, the difference between this sale price and the amount debited by defendant against the letter of credit. Defendant counterclaimed, seeking damages also on various contract theories.

The trial court, in relevant part, found the agreement to have been modified to reflect a January 17 delivery date, and that the amendment of the letter of credit, drafted by plaintiff, did not reflect any continuing obligation by defendant to make a partial delivery by January 15. The court also found that plaintiff's repudiation of the contract was premature, that defendant would have delivered the oil as per the agreement on time but for plaintiff's repudiation, that plaintiff, by failing to act reasonably and by failing to cooperate, frustrated defendant's full performance, and that the letter of credit was properly drawn against. We agree with these findings for the reasons stated by the trial court.

However, the trial court also found that defendant breached the implied covenant of good faith and fair dealing by failing to mitigate when faced with plaintiff's anticipatory breach, such as by seeking other customers for the oil and suing plaintiff for the difference in price. Although defendant's breach in this regard was not material, did not constitute a breach of the

terms of the underlying agreement and letter of credit, and did not waive plaintiff's own breach, the court found a basis to dismiss defendant's sixth counterclaim for its own lost profits. Effectively, the court's ruling would have precluded the nondefaulting party, in this case defendant, from continuing performance under the terms of the now-repudiated agreement when that course of conduct might increase the defaulting party's costs. The court concluded that if the defendant had presented the invoice, triggering plaintiff's obligation to pay, without drawing against the letter of credit, and then sought to mitigate by selling, even at a loss, to a third party, it could have recovered the purchase price, as offset by the proceeds of the sale. In this regard, we disagree.

Initially, the nonbreaching party is required to mitigate its own injuries (*see, Holy Props. v Kenneth Cole Prods.*, 87 NY2d 130), not potential injury to the breaching party, so that defendant did not improperly fail to resell the oil. Moreover, although defendant was entitled to respond to the breach by terminating further performance, it was not required to do so, but could also continue to partially perform, subject only to a standard of reasonableness, and then sue for partial breach (UCC 2-311 [3]); *Arp Films v Marvel Entertainment Group*, 952 F2d 643, 649). Defendant's conduct here compels the conclusion that it neither acted in bad faith nor unfairly, but acted reasonably, requiring reinstatement of the sixth counterclaim. Defendant is thereby entitled to recover $395,499.55, representing the difference between what defendant received under the letter of credit and what it would have received had plaintiff fully performed. Finally, the evidence also demonstrates defendant's entitlement to recovery of $48,213.37 under the fifth counterclaim for storage costs at the facility. Plaintiff had agreed to pay defendant 25 cents per barrel per month for any period of time the oil was stored at the Bayonne facility. The record includes defendant's chart establishing the exact amount of oil stored there from January 18 through March 20, 1990, when plaintiff removed the last oil from the facility. Concur—Milonas, J. P., Rosenberger, Williams, Tom and Saxe, JJ.,